1  RICHARD DOYLE, City Attorney (#88625)
   NORA FRIMANN, Chief Trial Attorney (#93249)
2  MICHAEL R. GROVES, Senior Deputy City Attorney (#85620)
   CLIFFORD S. GREENBERG, Senior Deputy City Attorney (#122612)
3  Office of the City Attorney
   200 East Santa Clara Street
4  San Jose, California  95113-1905
   Telephone: (408) 535-1900
5  Facsimile:   (408) 998-3131
   Email: cao.main@sanjoseca.gov
6
   Attorneys for Defendants
7  CITY OF SAN JOSÉ and SAN JOSÉ POLICE OFFICERS

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

| | |
|---|---|
| 12  THE SAN JOSE CHARTER OF THE HELLS ANGELS MOTORCYCLE CLUB, 13  et al., | NO. C99-20022 JF (PT) |
| 14           Plaintiffs, | **DEFENDANTS ROBERT CARNEY, PETER DECENA, MICHAEL KNOX, WILLIAM MANION, PAUL MESSIER, DAVE NEWMAN AND RAFAEL NIEVES' SURREPLY TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION** |
| 15       vs. | |
| 16  CITY OF SAN JOSE, et al., | |
| 17           Defendants. | |
| 18 | Date:       May 19, 2006 |
| 19 | Time:       9:00 a.m.<br>Courtroom: 3 |
| 20 | Judge:      Hon. Jeremy Fogel |

21

22                          **INTRODUCTION**

23        This limited Surreply is necessitated by the recent production to Plaintiffs of a

24  videotape entitled "Handling Vicious Dogs," and the use of such evidence in Plaintiffs'

25  Reply Brief.  The videotape was produced to *avoid* allegations of wrongful withholding of

26  documents and in the spirit of openness that accompanies civil discovery procedures.

27  The videotape was *not requested* in Plaintiffs' discovery requests and *does not* resolve

28  the issues of fact that preclude granting of summary adjudication in this case.

                                          1

# BACKGROUND

As documented in the letter Michael Groves sent to Plaintiffs' attorney on May 1, 2006 (see Exhibit A to Plaintiff's Reply Brief) Defense counsel came into possession of a videotape entitled "Handling Vicious Dogs" several weeks ago.  Another attorney in the City Attorney's Office, who provides advice and counseling to Animal Control Services, found the tape in her office while going through materials packed during the move to the New City Hall last year.  Upon watching the tape, Defense attorneys realized that it contained information about methods of subduing vicious dogs aside from the use of firearms.  The tape does not come close to dealing with a situation like the ones at issue in this case, but does contain material that Defense counsel assumed Plaintiffs' counsel would be interested in.

Defense counsel made an extensive inquiry into the source of the tape.  Mr. Groves determined that the tape was created in 1993 by the Los Angeles County Sheriff's Department and was downloaded by the San Jose Police Department in 1994 from a satellite feed supplied by the Police Officers Standards and Training (POST) organization.  Along with many other such tapes of downloaded programs, the videotape was stored on a shelf in the Video Unit and *never* distributed or used to train officers.  Indeed, none of the officers involved in the subject set of searches had seen or heard of the tape, and there are no records of the tape ever being used in any San Jose Police Department training.

After reviewing Plaintiffs' discovery requests and examining Rule 26 of the Federal Rules of Civil Procedure, Defense counsel determined that Defendants had no obligation to turn over the videotape to Plaintiffs.  However, Defendants' counsel also suspected that Plaintiffs' counsel would contend that the tape should be produced.  In order to avoid the prospect of later accusations, and in the spirit of full disclosure, Defense counsel decided to produce the tape and did so on May 1, 2006.

//

//

Defendants' Surreply to Plaintiffs' Motion for Summary Adjudication
C99-20022 JF (PT)

355919

**EXHIBIT A**

1

**<u>ARGUMENT</u>**

2

**A.  Defendants Had No Duty to Produce the Videotape.**

3          Rule 26 of the Federal Rules of Civil Procedure requires production, without a

4   discovery request, of "documents … that the disclosing party may use to support its

5   claims or defenses…."  Defendants had no duty to produce the videotape pursuant to this

6   rule, in that Defendants had no intention of using the videotape to support their claims or

7   defenses.

8          Plaintiffs claim in their Reply that they *requested* the videotape in April 2000.

9   (Reply, p. 8.)  They also claim that Defense counsel acknowledged that the videotape

10  "may have been responsive" to Plaintiffs' document requests.  (Reply, p. 3.)  These

11  assertions are untrue.

12         First, relevant discovery requests are reproduced in Plaintiffs' Reply brief, at page

13  3.  The requests call for production of documents, including training material, which

14  evidence, or relate to San Jose's <u>official, or "unofficial," custom and/or practice</u> regarding

15  procedures for handling dogs during the execution of warrants, etc.  As stated, the

16  investigation into the use, or non-use, of the videotape disclosed that it was never used in

17  training and had absolutely no relation to any San Jose custom or practice.  Plaintiffs

18  *could have* requested all training materials related to the handling of dogs, which would

19  have clearly included this video, but did not do so.  Plaintiffs' request was *limited* to

20  materials that evidenced or related to San Jose's policies and/or customs.  The videotape

21  **does not** evidence or reflect San Jose policy and/or custom.[1]

22         Furthermore, Mr. Groves' letter specifically states that the "tape does not fall into

23  any of the categories you requested…."  It is unclear why Plaintiffs would say that Mr.

24  Groves acknowledged that the tape may be responsive when he actually wrote that it is

25  not responsive.

26

27

---

28

[1] Plaintiffs also requested training materials that "were distributed" to police officers.  Since this videotape
was never distributed, it is not responsive to that request either.

3

Defendants' Surreply to Plaintiffs' Motion for Summary Adjudication
C99-20022 JF (PT)

355919

**EXHIBIT A**

1    In any event, Defendants have produced the tape, soon after it was discovered,

2  even though it was not requested.  Defendants, upon viewing the tape, realized that

3  *Plaintiffs* would believe it was pertinent to the litigation, and promptly sent it to Plaintiffs,

4  notwithstanding the inevitability that it would be used against them.  Instead of

5  condemning Defense attorneys and threatening sanctions, Plaintiffs should be thankful

6  that Defense attorneys have attempted to act fairly, and openly, in this situation.

7    **B.    The Videotape Does Not Resolve the Factual Issues Preventing
         Summary Adjudication.**

8

9    In this motion, relying on the authority of the Ninth Circuit opinion in this case,

10  Plaintiffs argue that they are entitled to judgment on the Fourth Amendment issue, i.e. the

11  reasonableness of the shooting of the dogs, based on the undisputed evidence submitted

12  in support of the original summary adjudication motion filed by Defendants.  Defendants

13  assert that those facts, and reasonable inferences derived therefrom, do not amount to

14  the establishment of liability.  Defendants simply wish to allow the officers to explain *why*

15  they had no other alternative plan, under the circumstances of the particular entries

16  involved, and Defendants simply wish to allow a jury to determine whether those reasons

17  for not considering other alternatives were reasonable.  The existence of the produced

18  videotape has no bearing on this determination.

19    First, none of the officers involved had ever seen the videotape or knew of its

20  existence.  As evidenced by the declarations supplied in opposition to this motion, the

21  officers were trained that there were no viable alternatives to deadly force under the

22  circumstances presented to them.  The videotape does not change this fact, even if it was

23  in the possession of the Department (on a shelf, unviewed).

24    Second, the tape contains only <u>general</u> suggestions about using alternative means

25  of dealing with dogs, without tailoring such suggestions to any situation similar to those

26  involved in this case.  The videotape explains that each situation is unique and there is no

27  way to mandate any one course of action.  From the videotape, it is apparent that the Los

28  Angeles Sheriff's Department had determined that certain alternative measures, such as

4

1  the use of OC (pepper) spray, fire extinguishers and flares, *may* be useful in minimizing

2  risk in situations where it is anticipated that a dog may be encountered.[2]  The videotape

3  only briefly mentions the execution of warrants and contains no advice whatsoever on

4  dealing with situations where dogs occupy an area between the officers and their goal.

5  The tape does not explain how to deal with a "high risk" situation, where the occupants of

6  the house itself are considered dangerous, in addition to the dogs outside.  The tape does

7  not deal with situations where time is an important factor.  In fact, the emphasis of the

8  tape seems to be on limiting a dog's movements while awaiting arrival of Animal Control,

9  for purposes of removing a vicious dog from a scene.  The emphasis of the video was on

10  dealing with loose dogs, not on ensuring a successful *search*, which was the goal of the

11  Hells Angels' warrants.   The tape does not deal with how to protect a search team from a

12  dog attack or how to make sure that a dog, once scared away, does not return to injure

13  someone.

14      In this case, the officers testified that they did not use other methods of restraining

15  the dogs in the particular circumstances of this case.  For example, they testified that they

16  did not allow a neighbor to attempt to control the dog at the Souza residence.  They also

17  testified that other methods of controlling dogs, such as the use of pepper spray, were

18  available **in other circumstances**.[3]  At trial, the officers should be allowed to fully explain

19  why they chose not to use these alternatives based on the circumstances that confronted

20  them.  Only fully developed testimony will allow a reasoned analysis of whether the

21  officers acted reasonably.

22

23

24  ---

[2] Note that even the suggestions in the tape do not include the use of tranquilizing devices, heavily relied

25  upon by Plaintiffs in arguments at the trial and appellate levels.  Note also that the only demonstrated use of pepper spray, on two pit bulls, was completely unsuccessful, requiring the shooting of one of the dogs.

26  [3] Plaintiffs contend that the officers acted *contrary to policy* by not using pepper spray or corralling the dogs.  (Reply pp. 8-9.)  Plaintiffs' contention is a misrepresentation of fact.  The testimony of the officers

27  supplied merely shows that *in other situations* officers have used pepper spray or other alternatives.  (See Fernandez testimony, attached as Exhibit E to Reply, "Everything changes your tactics… We've tried

28  hundreds of ways to deal with dogs.")  There is absolutely no testimony from officers that the alternatives could have applied to the instant searches.

5

Defendants' Surreply to Plaintiffs' Motion for Summary Adjudication
C99-20022 JF (PT)

355919

**EXHIBIT A**

1    In short, the existence of the videotape does not eliminate the factual issues

2  surrounding a reasonableness assessment for purposes of summary adjudication.  The

3  tape, and/or testimony relating to alternatives under particular circumstances, might be

4  used at trial in an attempt to convince the jury that the actions of the officers were either

5  reasonable or unreasonable.  Plaintiffs and/or Defendants may introduce expert

6  testimony dealing with police practices at the time of the incident.  However, neither the

7  facts supplied in the original motion nor the recently produced videotape serve to fully

8  answer the reasonableness question as a matter of law.

9                                   **CONCLUSION**

10    Plaintiffs' attempt to obtain a judgment, based only upon the evidence supplied for

11  purposes of Defendants' summary adjudication motion, and the law that resulted, should

12  be denied.  It must be recalled that Defendants' motion was largely devoted to the

13  concept that no clearly established law put Defendant officers on notice that their conduct

14  could violate the constitution.  The motion below, and the appeal that followed, centered

15  on that issue.  Defendants' argument was rejected by this court and by the Ninth Circuit.

16  Now that the case is remanded for purposes of trial, a full hearing is necessary to

17  evaluate the actions of the officers.

18

19  DATED:      May 12, 2006                    RICHARD DOYLE, City Attorney

20

21                                              By: _____/s/_____
                                                    CLIFFORD S. GREENBERG
                                                    Sr. Deputy City Attorney

22

23                                              Attorneys for Defendants
                                                CITY OF SAN JOSÉ and SAN JOSÉ
                                                POLICE OFFICERS

24

25

26

27

28

6

355919

**EXHIBIT A**